## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Plan for the Settlement of Jurisdictional Disputes in the Construction Industry, By and Through its Administrator Richard M. Resnick,** ) ) ) ) ) | **Case No:** _____ |
| **900 Seventh St., N.W.** ) **Suite 1000** ) **Washington, D.C. 20001** ) ) | |
| **Petitioner,** ) ) | |
| **v.** ) ) | |
| **Operative Plasterers & Cement Masons' International Association of the United States and Canada** ) ) ) ) | |
| **11720 Beltsville Drive** ) **Suite 700** ) **Beltsville, MD 20705** ) ) | |
| **Respondent.** ) ) | |

### PETITION TO CONFIRM ARBITRATION AWARDS

This is an action by the Administrator of the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry (hereafter "the Plan Administrator") to confirm two arbitration awards issued by Arbitrator John J. McMahon pursuant to the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry (hereafter "the Plan") and its Procedural Rules and Regulations. A true and correct copy of the Plan and its Procedural Rules and Regulations is attached hereto as Exhibit A.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction under Section 301 of the Labor-Management Relations Act of 1947, as amended, 29 U.S.C. § 185, and the Federal Arbitration Act, 9 U.S.C. §§ 1-11. In addition, Petitioner Plan for the Settlement of Jurisdictional Disputes in the Construction Industry is an unincorporated joint labor-management organization with its principal place of business in Washington, D.C. and Respondent Operative Plasters & Cement Masons International Association of the United States and Canada is an unincorporated labor organization with its principal place of business in Beltsville, Maryland. There is complete diversity of citizenship between the parties and more than $ 75,000, exclusive of interest and costs, is at stake in this controversy; so that this court has jurisdiction of this matter pursuant to the provisions of 28 U.S.C. § 1332(a)(1).

2.      Venue is proper in the District Court for the District of Columbia because the District Court for the District of Columbia is the court specified in Article VI, Section 2(f)-(i), of the Plan for actions to enforce arbitration awards, and because the District Court for the District of Columbia is the district within which the arbitration awards in Plan Cases IL 8/3/06 and IL 8/18/06 were made.

## PARTIES

3.    Plaintiff Richard M. Resnick is Administrator of the Plan, authorized to handle all matters arising under the Plan including enforcement of a decision rendered by an arbitrator pursuant to the provisions of the Plan.

4.      Respondent Operative Plasters & Cement Masons International Association of the United States and Canada (hereafter "OP&CMIA") is a labor organization that represents

employees in the building and construction industry, which is stipulated to, and bound by, the terms of the Plan.

## PLAN CASE IL 8/3/06

5.    Article V, Section 1, of the Plan states: "[w]hen a dispute over an assignment of work arises, the National or International Union challenging the assignment, or the Employer directly affected by the dispute . . . shall notify the Administrator in writing, with copies to the other parties to the dispute."

6.    Article V, Section 3, of the Plan states: "[i]f the respective National and International Unions of the disputing [local union] and the directly affected Employer are unable to resolve the dispute, any of the directly affected parties may request arbitration of the dispute . . . ."

7.    Article V, Sections 4 and 5, of the Plan set forth a procedure pursuant to which the Plan Administrator is authorized to select an arbitrator from a list of impartial arbitrators knowledgeable about the construction industry, who have been chosen by the Joint Administrative Committee (hereafter "JAC") established in accordance with Article III of the Plan to oversee operation of the Plan.

8.    Article V, Section 6, of the Plan authorizes the arbitrator selected by the Plan Administrator to set and hold a hearing in Washington, D.C.

9.    Article V, Section 7, of the Plan states: "the decision of the arbitrator [selected by the Plan Administrator] shall be final and binding on all parties to the dispute."

10.   Article VII, Section 2, of the Plan obligates all parties stipulated, and therefore, bound by the Plan immediately to accept and comply with a decision rendered by an arbitrator concerning assignment of work and authorizes the Plan Administrator, with approval of the JAC,

to "proceed in the same manner as the enforcement of an arbitrator's decision set forth in Section 2(f)-(i) of Article VI [of the Plan]."

11.  On July 10, 2006, J.P. Phillips, Inc. (hereafter "Phillips"), executed a Stipulation pursuant to which it agreed to be bound by the terms of the Plan. A true and correct copy of this July 10, 2006 Stipulation is attached to this Petition as Exhibit B.

12.  By letter dated August 1, 2006, the International Union of Bricklayers and Allied Craftworkers (hereafter "IUBAC"), which is a labor organization that represents employees in the building and construction industry and is stipulated to, and bound by, the terms of the Plan, notified the Plan Administrator of a dispute with Respondent OP&CMIA, and concerning assignment of plastering and restoration of plastering work by Phillips, pursuant to a subcontract with Core Construction, Inc., at the Illinois State House in Springfield, Illinois. A true and correct copy of the IUBAC's August 1, 2006 letter is attached hereto as Exhibit C.

13.  The parties were unable to resolve the dispute and, by letter dated August 7, 2006, the IUBAC requested arbitration pursuant to Article V, Section 3, of the Plan.  A true and correct copy of the IUBAC's August 7, 2006 letter is attached hereto as Exhibit D.

14.  Pursuant to Article VI, Section 2, of the Plan, the Plan Administrator selected John J. McMahon to arbitrate the dispute, which was docketed as Plan Case IL 8/3/06.

15.  Arbitrator McMahon held a hearing on August 22, 2006 in Washington, D.C., which was attended by representatives of all the parties, and based on all the evidence presented, issued a written award dated August 24, 2006 that resolved the dispute in Plan Case IL 8/3/06. A true and correct copy of Arbitrator McMahon's August 24, 2006 award is attached hereto as Exhibit E.

**PLAN CASE IL 8/18/06**

16. Article III, Section 3a, of the Plan's Procedural Rules and Regulations prohibits "impediments to job progress" which include "[f]iling a grievance . . . under a local plan for the settlement of jurisdictional disputes not recognized by the [Building and Construction Trades] Department [of the AFL-CIO] where an issue is a case, dispute or controversy involving a jurisdictional dispute or assignment of work by a stipulated contractor, or by a stipulated subcontractor . . . ."

17. Article III, Section 1, of the Plan's Procedural Rules and Regulations states: "[w]hen it is alleged, in a written notice, by a stipulated employer directly affected by the dispute . . . or a National or International Union that a[n] impediment to job progress is taking place, the Administrator shall proceed as set forth in Article VI of the Plan."

18. Article VI, Section 2(b), of the Plan further states: "upon receipt of said notice, the Administrator . . . shall select an arbitrator. . . ."

19. Article VI, Section 2(c), of the Plan then states: "[u]pon his selection, the Arbitrator shall hold a hearing within 24 hours if it is contended that a violation [of Article III, Section 3a, of the Plan's Procedural Rules and Regulations] still exists."

20. Article VI, Section 2(e), of the Plan further states: "[t]he sole issue at the hearing shall be whether a violation of this Article has in fact occurred."

21. Phillips claimed in a letter dated August 18, 2006 to the Plan Administrator that the OP&CMIA and its Local 18 violated the prohibition against impediments to job progress in Article III, Section 3a, of the Plan's Procedural Rules and Regulation by pursuing an unapproved local arbitration procedure for resolving disputes concerning assignment of work, which resulted in an award by Arbitrator Glenn A. Zipp and then threatening legal action to enforce the Zipp

Award. A true and correct copy of Phillips' August 18, 2006 letter is attached hereto as Exhibit F.

22. Pursuant to Article VI, Section 2, of the Plan, the Administrator selected John J. McMahon to arbitrate the dispute, which was docketed as Plan Case IL 8/18/06.

23. Arbitrator McMahon held a hearing regarding the dispute in Plan Case IL 8/18/06 on August 22, 2006 in Washington, D.C., which was consolidated with the hearing concerning the dispute in Plan Case IL 8/3/06, that was attended by representatives of all parties and, based on the evidence presented, he subsequently issued a written award dated August 24, 2006 that resolved the dispute in Plan Case IL 8/18/06, which was incorporated in the same decision with his award in Plan Case IL 8/3/06. A true and correct copy of Arbitrator McMahon's August 24, 2006 award is attached hereto as Exhibit E.

### OP&CMIA APPEAL OF PLAN CASE IL 8/3/06

24. Article V, Section  12, of the Plan states: " [a]ny party to a dispute that has been arbitrated that believes the Arbitrator failed to address the established criteria of Article V, Section 8 [of the Plan], may request the [JAC] to consider an appeal. No appeal may be processed unless the Arbitrator's decision has been implemented."

25. Article V, Section 13, of the Plan states: "[a] request to consider an appeal from a final decision of a Plan Arbitrator shall be filed with the Administrator, with copies to the other parties to the dispute, within five days of the date the Administrator transmitted the Arbitrator's decision. The request to consider an appeal shall include a copy of the Arbitrator's decision being appealed and a statement describing the basis of the claim that the Arbitrator failed to address the established criteria of Article V, Section 8 [of the Plan]."

26.  Article V, Section 14, of the Plan further states:"[o]nce the submissions of the parties are complete, the Administrator shall distribute copies of the appeal to the members of the JAC that are not parties to the dispute. Within five days from receipt of the submissions, each member of the JAC shall notify the Administrator whether the appeal should be heard.  If a majority of the JAC does not wish to consider the appeal, the decision of the Arbitrator shall be final and binding."

27.  On August 31, 2006, OP&CMIA filed a timely appeal of Arbitrator McMahon's August 24, 2006 award in Plan Case IL 8/3/06 with the JAC.

28.  By letter dated September 20, 2006, the Administrator notified the OP&CMIA that a majority of the members of the JAC voted not to consider the appeal, and that, as a result, the decision of the Arbitrator in Plan Case IL 8/3/06 was final and binding. A true and correct copy of the Administrator's September 20, 2006 letter is attached hereto as Exhibit G.

## FINALITY OF AWARDS IN PLAN CASES IL 8/3/06 AND IL 8/18/06

29.  Arbitrator McMahon's August 24, 2006 award in Plan Case IL 8/3/06 is a complete and final determination of all claims submitted to arbitration. The award has not been corrected, vacated or modified since issued.

30.  Arbitrator McMahon's August 24, 2006 award in Plan Case IL 8/18/06 is a complete and final determination of all claims submitted to arbitration. The award has not been vacated or modified since issued.

## CONFIRMATION OF AWARDS IN PLAN CASES IL 8/3/06 AND 8/18/06

31.  Article VII, Section 2, of the Plan states:  "If a party fails to accept and comply with a jurisdictional decision of an arbitrator or a ruling of the Administrator or the JAC, the

Administrator may, with the approval of the JAC, proceed in the same manner as the enforcement of an arbitrator's decision set forth in Section 2(f)-(i) of Article VI."

32. Article VI, Section 2(g), of the Plan further states that all parties signatory or stipulated to the Plan consent to the jurisdiction of this Court for purposes of enforcement of an arbitration award rendered pursuant to the Plan, and in proceedings to obtain a temporary order enforcing the arbitration award, waive the right to a hearing and agree that such proceedings may be *ex parte*.

33. On December 14, 2006, the Plan Administrator, acting pursuant to Article VII, Section 2, of the Plan, sought the authorization from the JAC to file an enforcement action in Plan Cases IL 8/3/06 and IL 8/18/06. The JAC subsequently authorized the Plan Administrator's request.

## COUNT I

### CONFIRMATION OF AWARD IN PLAN CASE IL 8/3/06

34. This petition to confirm the award in Plan Case IL 8/3/06 is timely because it is filed within one year after the award was made.

35. The Court must confirm the award in Plan Case IL 8/3/06 because it has not been vacated, modified or corrected.

## COUNT II

### CONFIRMATION OF AWARD IN PLAN CASE IL 8/18/06

36. This petition to confirm the award in Plan Case IL 8/18/06 is timely because it is filed within one year after the award was made.

37. The Court must confirm the award in Plan Case IL 8/18/06 because it has not been vacated, modified or corrected.

**WHEREFORE**, Plaintiff respectfully requests that the Court grant its Petition as follows:

1. Issuance of an Order confirming Arbitrator McMahon's final award in Plan Case IL 8/3/06; and

2. Issuance of an Order confirming Arbitrator McMahon's final award in Plan Case IL 8/18/06; and

3. Issuance of an Order directing that judgment be entered on the Orders confirming the final arbitration awards.

Respectfully submitted,

Dated: January 19, 2006

TERRY R. YELLIG (D.C. Bar ID No. 946095)
MARTIN J. CRANE (D.C. Bar ID No. 436424)

SHERMAN, DUNN, COHEN, LEIFER & YELLIG, P.C.
900 Seventh St., N.W.
Suite 1000
Washington, D.C. 20001
(202) 785-9300

Attorneys for Petitioner Plan for the Settlement of Jurisdictional Disputes in the Construction Industry, by and through Administrator Richard M. Resnick

## PROCEDURAL RULES AND REGULATIONS FOR
## THE PLAN FOR THE SETTLEMENT OF JURISDICTIONAL DISPUTES IN THE CONSTRUCTION INDUSTRY

These procedures shall apply to:

A. Employers who employ members of the organizations affiliated with the Building and Construction Trades Department, AFL-CIO, and who signed a stipulation setting forth that they are willing to be bound by the terms of the agreement establishing the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry, or who are members of a stipulated association of employers with authority to bind its members, or who are parties to a collective bargaining agreement providing for the settlement of jurisdictional disputes under the procedures herein set forth.

B. All National and International Unions affiliated with the Building and Construction Trades Department, AFL-CIO, and their local constituent bodies. The stipulation form adopted by the Joint Administrative Committee follows:

### STIPULATION

In signing this stipulation, the undersigned (employer) (employer association on behalf of its members) agrees to be bound by all the terms and provisions of the Agreement establishing procedures for the resolution of jurisdictional disputes in the construction industry known as the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry. In particular, the undersigned agrees to abide by those provisions of the Plan requiring compliance with the decisions and awards of the Administrator, arbitrators or National Arbitration Panels established under the Plan, and to fulfill the obligations of the Employer set forth in the Agreement.

This stipulation shall run for the term of the Agreement and shall continue in effect for each year thereafter unless specifically terminated effective upon the anniversary date of said Agreement, in accordance with the notice provisions contained in the Agreement. The effective date of this stipulation shall be
(Signed)..................................................................................................
Company..................................................................................................
Date..................................................................................................

To facilitate expeditious processing of jurisdictional disputes, employer parties to the Plan are encouraged to file signed Stipulation forms with the Administrator.

1



PLAINTIFF'S EXHIBIT

A

ARTICLE I

CONTRACTOR'S RESPONSIBILITY

1.      The contractor who has the responsibility for the performance and installation shall make a specific assignment of the work which is included in his contract.  For instance, if contractor A subcontracts certain work to contractor B, then contractor B shall have the responsibility for making the specific assignments for the work included in his contract.  If contractor B, in turn, shall subcontract certain work to contractor C, then contractor C shall have the responsibility for making the specific assignment for the work included in his contract.  After work has been so assigned, such assignment will be maintained even though the assigning contractor is replaced and such work is subcontracted to another contractor.  It is a violation of the Plan for the contractor to hold up disputed work or shut down a project because of a jurisdictional dispute.

2.      When a contractor has made an assignment of work, he shall continue the assignment without alteration unless otherwise directed by an arbitrator or there is agreement between the National or International Unions involved.

a.      Unloading and/or handling of materials to stockpile or storage by a trade for the convenience of the responsible contractor when his employees are not on the job site, or in an emergency situation, shall not be considered to be an original assignment to that trade.

b.      Starting of work by a trade without a specific assignment by an authorized representative of the responsible contractor shall not be considered an original assignment to that trade, provided that the responsible contractor, or his authorized representative, promptly, and, in any event, within eight working hours following the start of work, takes positive steps to stop further unauthorized performance of the work by that trade.

c.  The Administrator shall determine all questions of original assignment of work and render decisions regarding same.  An appeal of the Administrator's determination of original assignment may be made to an arbitrator in a hearing under the terms and provisions of Article V of the Plan.   Notice of the appeal shall be filed with the Administrator within seven (7) days of issuance of the determination.  *The appeal shall be processed only if the responsible contractor has complied with the Administrator's determination.*

d. Criteria to be used in making assignments of work are set forth in Article V, Section 8, of the Plan.

2

## ARTICLE II

### UNION'S RESPONSIBILITY

1.    The Plan provides (Article VI, Section 1) that during the existence of the Plan there shall be no strikes, work stoppages, or picketing arising out of any jurisdictional dispute.

2.    When a contractor has made a specific work assignment, all unions shall remain at work and process any complaint over a jurisdictional dispute in accordance with the procedures herein established by the Administrator.  Any union which protests that a contractor has failed to assign work in accordance with the procedures specified above, shall remain at work and process the complaint through its International office. The Administrator is prohibited from taking action on protests or requests to discuss jurisdictional matters from local unions or building and construction trades councils.

## ARTICLE III

### STRIKES AND IMPEDIMENTS TO JOB PROGRESS

1.    When it is alleged, in a written notice, by a stipulated employer directly affected by the dispute, or the signatory Employer Association representing such employer, that a work stoppage, slowdown, or other impediment to job progress is taking place, the Administrator shall proceed as set forth in Article VI of the Plan.

2.    Notice to the Administrator shall include:

a.    Union engaged in strike, slowdown, or impediment to job progress [specify]

b.    Other union or unions directly involved (in most cases, trade receiving original assignment)

c.    Brief description of work in dispute

d.    Name and city and state location of project

e.    Contractor and subcontractor, if any, directly involved, and mailing address, phone number and facsimile number of each

f.    A statement detailing how the responsible contractor is stipulated to be bound to the Plan and these procedures.

REQUIRED FORMAT FOR NOTICE

_____ [Name of Union]_____is [state basis for claim of violation, *e.g.* strike] in jurisdictional dispute with _[Name of Union]____over _(Briefly describe work and name of job)_ project, ____(City and state or Province),_____ [Name of Contractor], (Mailing Address, Phone Number and Facsimile Number), [Name of Subcontractor], (Mailing Address, Phone Number and Facsimile Number).
This contractor is stipulated to the Plan and these procedures by virtue of _(provision in collective bargaining agreement or signed stipulation on file in Plan office)._

    3.    Impediments to job progress shall include, but not be limited to:

    a.    Filing a grievance under a collective bargaining agreement, or under a local plan for the settlement of jurisdictional disputes not recognized by the Department, where an issue is a case, dispute or controversy involving a jurisdictional dispute or assignment of work by a stipulated contractor, or by a stipulated subcontractor. Provided, that it shall not be considered an impediment to job progress if the responsible contractor is not stipulated to the Plan.

    b.    Filing an unfair labor practice charge with the National Labor Relations Board, or appropriate Canadian equivalent, as determined by the Administrator, or action in any court against a stipulated employer by a National or International Union, or local affiliate thereof, where an issue is a case, dispute or controversy involving a jurisdictional dispute or assignment of work. Provided, that it shall not be considered an impediment to job progress if the responsible contractor is not stipulated to the Plan.

ARTICLE IV

FILING A COMPLAINT

    1.    When a dispute over an assignment of work arises, the National or International Union challenging the assignment, or the employer directly affected by the jurisdictional dispute, or the signatory Employer Association representing such employer, shall notify the Administrator in writing. Such notice shall include the following information:

    a.    Unions involved

    b.    A full and complete description of the work in dispute

    c.    Name and location of project

    d.    Contractors involved and their mailing addresses, telephone number and facsimile number

4

e.      The assignment of work and the contractor who made the assignment

f.      A statement detailing how the responsible contractor is stipulated to the Plan and these procedures.    Effective stipulation shall be either a collective bargaining agreement provision recognizing the Plan or a current signed stipulation form on file at the Plan office.

*g. A statement whether the representatives of the National and International Unions have met or attempted to meet at the local level in an effort to resolve the matter.*

*h. A statement whether the National and International Unions involved in the dispute have voluntarily agreed to mediation.*

2.      The notice shall be in writing and sent to:

For Projects in the United States

Administrator
Plan for the Settlement of Jurisdictional
Disputes in the Construction Industry
Suite 801
1125 15th Street, NW
Washington, DC  20005
Fax:  (202) 775-1950

For Projects in Canada

Administrator
Plan for the Settlement of Jurisdictional
Disputes in the Construction Industry
c/o Office of the Executive Secretary
Building and Construction Trades Department, AFL-CIO
350 Sparks Street
Suite 910
Ottawa, Ontario
K1R 7S8
Fax:  (613) 230-5138

ARTICLE V

TIME CONSTRAINTS UNDER THE PLAN

In computing any period of time prescribed in the Plan or the procedural rules, the day from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday. When the period of time described or allowed is less than 7 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation. As used herein, "legal holiday" in the United States includes New Year's Day, Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day designated as a holiday by the Administrator. "Legal holiday" in Canada includes New Year's Day, Victoria Day, Labour Day, Remembrance Day, Boxing Day, Good Friday, Canada Day (Dominion Day), Thanksgiving Day, Christmas Day, Civic Holiday, and any other designated as a holiday by the Administrator.

ARTICLE VI

DIRECT RESOLUTION

1.    Within two (2) days following receipt of a properly filed notice, the Administrator shall notify, by facsimile, all directly affected National and International Unions and employers that a dispute exists between local parties.

2.    If the directly affected National and International Unions and employers, parties to the dispute, are able to settle the dispute, each shall inform the Administrator, in writing, signed by an authorized representative of each party, that a settlement has been reached.

3.    If the directly affected National and International Unions and employers are unable to resolve the dispute, any of the directly affected parties may request arbitration of the dispute within five (5) days from the date the matter was referred by the Administrator, by filing a notice in writing to arbitrate with the Administrator, with copies to all directly affected parties.

ARTICLE VII

SELECTING AN ARBITRATOR

1.    Upon receipt of a request to arbitrate, the Administrator shall send to all directly affected parties a list of impartial arbitrators, knowledgeable about the construction industry, chosen by the Joint Administrative Committee.

2.    The directly affected National and International Unions and the responsible contractor(s) will each have three days in which to cross off the name of one arbitrator to which it objects, number the remaining names to indicate the order of preference and return the list to the Administrator.  If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable.  From among the persons who have been approved on each party's list, and in accordance with the designated order of mutual preference, the Administrator shall notify the parties of the arbitrator selected who is able to schedule a hearing within the time constraints set forth in the Plan.

3.    If the parties are unable to select an arbitrator, the Administrator shall appoint an arbitrator.

ARTICLE VIII

RESOLUTION BY ARBITRATION

1.    Upon his selection, the arbitrator, with the assistance of the Administrator, shall set and hold a hearing within seven (7) days.

2.    The Administrator shall notify the responsible contractor(s) and the appropriate National and International Unions and signatory association(s) by facsimile of the place and time chosen for the hearing.  Said hearing shall be held in Washington, D.C. or, for a dispute arising in Canada, in Eastern, Central or Western Canada as determined by the Administrator.

3.    Attendance at arbitration hearings by the parties shall be limited to one full-time employee of each National or International Union party, *or its affiliate, as designated by the President of each National or International Union*, and one full-time employee of the responsible contractor party.  On appeals from Local Boards, each party may also have in attendance the individual who presented that party's case to the Local Board.  Failure to attend by a party shall not delay a hearing, the taking of evidence, or the issuance of a decision.

4.    Presentations shall be in writing with copies for each party, the arbitrator, and a file copy.

5.    The arbitrator shall issue his decision within three (3) days after the case has been closed.  The decision of the arbitrator shall be final and binding on all parties to the dispute.

6.      Each party to the arbitration shall bear its own expenses for the arbitration and agrees that the fees and expenses of the arbitrator shall be borne by the losing party or parties as determined by the arbitrator.

7.      Following the issuance of the decision, the Administrator will send a statement to the losing party or parties allocating the arbitrator's fees and expenses. Such statement shall be payable within ten (10) days of receipt.  If payment is not received within 30 days, a late fee of $500 will be assessed on the delinquent party.  A future request by a delinquent party to process a case will be held by the Administrator until all outstanding fees and expenses, including any late fee, have been paid.

ARTICLE IX

POLICY REGARDING DIRECTIVES

1.      The Plan and the Procedural Rules and Regulations provide for the settlement of a jurisdictional dispute on a specific job by agreement or understanding between or among the National and International Unions involved.

2.      The Procedural Rules also provide that an assignment of work may be changed by the responsible contractor(s) to conform to the terms of same, upon notification by the Administrator.  Such notification shall be made by means of a directive sent to the responsible contractor(s) by the Administrator.

3.      In order to give effect to the procedure set forth above, and before a directive may be sent to the affected contractor(s) by the Administrator, the National or International Unions involved shall submit for the records of the Plan the following:

a.      A statement of by what document the responsible contractor is stipulated to the agreement.

b.      A statement of the exact terms of the agreement or understanding reached. Such statement is to be jointly signed by authorized representatives of each of the National or International Unions involved.  If separate communications are submitted by the parties, the terms of the agreement or understanding must be identical in each communication.

c.      A statement regarding the notification to the responsible contractor(s) of the agreement or understanding reached.  If objection to the agreement or understanding was made by the contractor(s) or representatives, the nature of the objection must be stated.

4.      In accordance with the Plan and the Procedural Rules, any directive from the Administrator shall be complied with by the affected contractor(s) unless, and within 24 hours following receipt of such directive, the contractor(s) notifies the Administrator

that he elects not to comply with the directive, and requests that the jurisdictional dispute be processed through arbitration to a decision.  Such decision shall be made in accordance with the provisions of Article V of the Plan.

ARTICLE X

APPEALS FROM DECISIONS OF RECOGNIZED
LOCAL BOARDS

1.    Appeals from local settlements, agreements, or decisions issued by a Plan for the settlement of jurisdictional disputes that has been recognized by the Department, may be filed with the Administrator within seven (7) days of issuance by the National or International Unions directly affected, or by the responsible contractor(s), or a signatory Employers Association representing such employer.

a.    Such filing shall include a copy of the local settlement, agreement, or decision being appealed and the specific basis for the appeal.  Simultaneous notice shall be given all other parties.

2.    The authority of the Administrator to refer an appeal to arbitration is discretionary.  The Administrator shall, in exercising his authority, consider whether the parties were afforded opportunity to present evidence at a hearing conducted for that purpose under the Plan and in conformity with generally recognized procedures not incompatible with the provisions and procedures of this Plan.

3.    Appeals referred to arbitration will be processed in accordance with Article V of the Agreement.

4.    Presentations shall be in writing and limited to that which was presented at the recognized local Plan for the settlement of jurisdictional disputes.

## PLAN FOR THE SETTLEMENT OF JURISDICTIONAL
## DISPUTES IN THE CONSTRUCTION INDUSTRY

### PREAMBLE

This Agreement is entered into by and among the Building and Construction Trades Department, AFL-CIO, on behalf of its constituent National and International Unions (referred to hereinafter as the Department) and the Employer Associations signatory to this Agreement (referred to hereinafter as the Employer Associations).

The parties to this Agreement dedicate their efforts to improving the construction industry by providing machinery for the handling of disputes over work assignments without strikes or work stoppages thus stabilizing employment in the industry at the same time increasing both its efficiency and capacity to furnish construction services to the public at reasonable cost.

### ARTICLE I

### SCOPE OF APPLICATION

The procedure shall apply to:

(a)    Employers who employ members of the organizations affiliated with the Department and who have signed a stipulation setting forth that they are willing to be bound by the terms of this Agreement or who are members of a stipulated association of employers with authority to bind its members, or who are parties to a collective bargaining agreement providing for the settlement of jurisdictional disputes under these procedures herein set forth or any predecessor Plan.

The essence of this Plan assumes voluntary participation. National Employer Associations shall encourage participation in this Plan by their chapters and members, but no contractor stipulation or agreement shall be recognized by the Administrator if it is shown to the satisfaction of the Administrator that it is the result of unlawful strikes, work stoppages or other coercive activity or any activity which is contrary to the voluntary nature of this Plan, by a labor organization affiliated with the Department. Notwithstanding any other provision of this Plan should such action be taken against any chapter or member of any participating Employer Association to compel stipulation to the Plan, its parent association, if it is signatory to this Plan, shall thereby have the option to terminate its participation upon written notice to the Administrator within thirty (30) days of such action or occurrence, provided that notice of the action or occurrence has been afforded to the Department by the parent association during the thirty (30) day period and prior to any notice of termination.

(b)    All National and International Unions affiliated with the Building and Construction Trades Department, AFL-CIO, and their local constituent bodies.

## ARTICLE II

## STIPULATION PROCEDURE

Sec. 1.  The Department of National and International Unions affiliated with the Department shall, in accordance with their constitutional powers, request each of the Building and Constructions Trades Department Councils, District Councils and Local Unions, respectively:

(a)    To secure written assent or stipulation to the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry by all Employers in signed agreement with said National or International Union, Council and/or Local Union except for such Employers who are stipulated to the Plan by the action of the Employer Association of which they are members; or

(b)    To proceed at the earliest opportunity to negotiate stipulation to the Plan into all agreements with each employer whose employees are represented by such Building Trades Council, District Council or Local Union.

Sec. 2.  All Employer Associations shall seek to have their local chapters stipulate their membership to the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry unless the national Employer Association has made such stipulation on behalf of its membership.   In the event a local chapter refuses to stipulate, the national association shall notify the Joint Administrative Committee of the negative action of the specific local chapter and/or the individual member.

Sec. 3.  It is understood that only those Employers or Employer Associations who employ members of the organizations affiliated with the Department shall be considered bound by this Agreement when they have signed a stipulation setting forth that they are willing to subscribe to and be bound by the terms and provisions of this Agreement.

## ARTICLE III

## JOINT ADMINISTRATIVE COMMITTEE

Sec. 1.  There shall be established a Joint Administrative Committee (hereinafter referred to as the "JAC"), to oversee the operation of the Plan.

Sec. 2.  The JAC representing the Department and the signatory Employer Associations shall consist of eight (8) voting members, four (4) nominees from the Department and four (4) from the Employer Associations.   There shall be a Chairman

and a Vice-Chairman of the JAC. The Chairman shall be the President of the Department. The Vice-Chairman shall be designated by the signatory Employer Associations. The Chairman and the Vice- Chairman shall be non-voting members of the Committee.

Sec. 3. The JAC shall appoint two Administrators of the Plan. One Administrator shall handle all matters arising in the United States. The second Administrator shall handle all matters arising in Canada. References to the Administrator in this Agreement and the Procedural Rules shall mean the appropriate U.S. or Canadian Administrator. The Administrator shall be compensated at a rate and under terms to be established by the JAC.

Sec. 4. The Administrator shall be bonded and made responsible for disbursement of the funds, shall keep the books of the Plan and submit to parties to the Agreement a quarterly financial statement; shall provide for an annual audit of the books by a certified public accountant and shall prepare annually a proposed budget of the necessary expenses of the Plan for the following twelve (12) months and submit same to the JAC for approval. The total amount of the budget, when approved, shall be subscribed annually in advance, 50 percent by the Department and 50 percent by the signatory Employer Associations. All expenditures shall be within the approved budget. In order to assure adequate funding of the Plan, the JAC may establish a schedule of fees to be charged to parties wishing to utilize the services of the Plan but who are not affiliated with any of the organizations signatory to this Agreement.

ARTICLE IV

RULES AND REGULATIONS

Sec. 1. The Administrator shall adapt his operations to assure that all cases submitted shall be disposed of as expeditiously as possible.

Sec. 2. The Administrator, with the prior approval of the JAC, shall establish such procedural regulations and administrative practices as may be required for the effective administration of this Agreement, provided such regulations and practices are consistent with the expressed terms of this Agreement.

Sec. 3. The JAC shall have the power to revise the procedural regulations and administrative practices of the Administrator. The Administrator shall promptly notify all parties to the Plan of any revisions in the procedural or administrative practices.

Sec. 4. The Administrator shall keep records of disputes and decisions and develop such statistical and operational information as may be of value to the JAC. The Administrator shall from time to time make recommendations to the JAC for changes in the procedural rules or provisions of the Plan which will strengthen and improve the effectiveness of the Plan.

Sec. 5.  It shall be the duty of the Administrator to process cases of jurisdictional disputes in the Building and Construction Industry when disputes are referred to him by any of the National and International Unions involved in the dispute, or an Employer directly affected by the dispute on the work in which he is engaged or by the signatory Employer Association representing such Employer.  The Administrator shall only process cases in which all parties to the dispute are stipulated to the Plan in accordance with Article II or, upon the filing of a dispute, become stipulated to the Plan in accordance with Article II.  In the Administrator's sole discretion, the issue of stipulation may be submitted to an Arbitrator.  The Arbitrator shall be bound to apply the same terms of the Plan and the Procedural Rules regarding stipulation as the Administrator.

*Sec. 6.  If the responsible contractor is not stipulated to the Plan, any of the National and International Unions involved in a dispute with the contractor may file a statement with the Plan Administrator indicating that, if the contractor had been stipulated to the Plan, the Union would have filed a jurisdictional dispute pursuant to Article V of the Plan.  The notice shall include the unions involved, a description of the work in dispute, the name and location of the project, the name of the responsible contractor, the assignment that was made by the contractor and which of the Article V, Section 8, criteria the Union contends supports its claim to the work.  The Plan Administrator shall compile a list of such statements and distribute it to the parties to the Plan monthly.*

Sec. 7.  In the interest of expediting resolutions of jurisdictional disputes, the Administrator shall undertake to keep a record of decisions involving the same type of dispute and involving the same trades and report such record quarterly to the JAC.

ARTICLE V

RESOLUTION OF JURISDICTIONAL DISPUTES

Sec. 1.  When a dispute over an assignment of work arises, the National or International Union challenging the assignment, or the Employer directly affected by the dispute or the signatory Employer Association representing such Employer shall notify the Administrator in writing, *with copies to the other parties to the dispute.  The notice shall include a statement whether representatives of the National and International Unions have met or attempted to meet with the local parties to attempt to resolve the matter.  For disputes in the United States, if the National and International Unions involved in the dispute voluntarily agree to mediation, the notice shall so advise the Administrator.  The mediation may be used in lieu of the meeting of the International Representatives.*

13

Sec. 2.  Upon receipt of said notice, the Administrator or his designee shall notify within two (2) days by facsimile all directly affected National and International Unions and employers that a dispute exists between the local parties.  *The Administrator shall also provide notice of the dispute to all other National and International Unions party to this Agreement.  At the same time, if the National and International Unions involved in a dispute in the United States have consented to voluntary mediation, the Administrator shall contact the Federal Mediation and Conciliation Service and request the appointment of a mediator to assist the parties in the local area in settling the dispute.  The mediator shall have three (3) days from the date the matter is referred by the Administrator to mediate the dispute.  The mediator shall submit by facsimile a report to the parties and the Administrator indicating whether the dispute has been resolved no later than the end of the three (3) day period. The report of the mediator shall not be submitted to a Plan Arbitrator.*

Sec. 3.  If the respective National and International unions of the disputing locals and the directly affected Employer are unable to resolve the dispute, any of the directly affected parties may request arbitration of the dispute, within five (5) days, from the date the matter is referred by the Administrator, by filing a notice to arbitrate with the Administrator, with copies to all directly affected parties.  *The Administrator will only honor a request to submit the matter to arbitration prior to the expiration of the five (5) day period if the requesting party has demonstrated that the International Representatives have met or attempted to meet with the local parties to resolve the matter or have been through the mediation process set forth in Section 2.*

Sec. 4.  Upon receipt of said notice, the Administrator shall send to all directly affected parties a list of impartial arbitrators knowledgeable about the construction industry, chosen by the JAC.

Sec. 5.   The directly affected National and International Unions and the responsible contractor(s) will each have three days in which to cross off the name of one arbitrator to which it objects, number the remaining names to indicate the order of preference and return the list to the Administrator.  If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable. From among the persons who have been approved on each party's list, and in accordance with the designated order of mutual preference, the Administrator shall notify the parties of the arbitrator selected.  If the parties are unable to select an arbitrator, the Administrator shall appoint the arbitrator.

Sec. 6.   Upon his selection the Arbitrator, with the assistance of the Administrator, shall set and hold a hearing within seven (7) days.  The Administrator shall notify the employer, and the appropriate National and International Unions and Employer Associations by facsimile of the place and time chosen for the hearing.  Said

hearing shall be held in Washington, D.C. or, for a dispute arising in Canada, in Eastern, Central or Western Canada as determined by the Administrator.  A failure of any party or parties to attend said hearing without good cause, as determined by the Administrator, shall not delay the hearing of evidence or issuance of a decision by the Arbitrator.

Sec. 7.  The Arbitrator shall issue his decision within three (3) days after the case has been closed.  The decision of the Arbitrator shall be final and binding on all parties to the dispute.

Sec. 8.  In rendering his decision, the Arbitrator shall determine:

*a) First whether a previous agreement of record or applicable agreement, including a disclaimer agreement, between the National or International Unions to the dispute governs;*

*b) Only if the Arbitrator finds that the dispute is not covered by an appropriate or applicable agreement of record or agreement between the crafts to the dispute, he shall then consider whether there is a previous decision of record governing the case;*

*c) If the Arbitrator finds that a previous decision of record governs the case, the Arbitrator shall apply the decision of record in rendering his decision except under the following circumstances.  After notice to the other parties to the dispute prior to the hearing that it intends to challenge the decision of record, if a trade challenging the decision of record is able to demonstrate that the recognized and established prevailing practice in the locality of the work has been contrary to the applicable decision of record, and that historically in that locality the work in dispute has not been performed by the other craft or crafts, the Arbitrator may rely on such prevailing practice rather than the decision of record.  If the craft relying on the decision of record demonstrates that it has performed the work in dispute in the locality of the job, then the Arbitrator shall apply the decision of record in rendering his decision.  If the Arbitrator finds that a craft has improperly obtained the prevailing practice in the locality, through raiding, the undercutting of wages or by the use of vertical agreements, the Arbitrator shall rely on the decision of record rather than the prevailing practice in the locality;*

*d) If no decision of record is applicable, the Arbitrator shall then consider the established trade practice in the industry and prevailing practice in the locality; and*

*e) Only if none of the above criteria is found to exist, the Arbitrator shall then consider that because efficiency, cost or continuity and good management are essential to the well being of the industry, the interests of the consumer or the past practices of the employer shall not be ignored.*

*The Arbitrator shall set forth the basis for his decision and shall explain his findings regarding the applicability of the above criteria. If lower-ranked criteria are relied upon, the Arbitrator shall explain why the higher-ranked criteria were not deemed applicable. The Arbitrator's decision shall only apply to the job in dispute.*

*Sec. 9.    Agreements of record are applicable only to the parties signatory to such agreements.    Decisions of record are applicable to all trades.*

Sec. 10.    The Arbitrator is not authorized to award back pay or any other damages for a misassignment of work.    Nor may any party to this Plan bring an independent action for back pay or any other damages, based upon a decision of an Arbitrator.

Sec. 11.    Each party to the arbitration shall bear its own expense for the arbitration and agrees that the fees and expenses of the Arbitrator shall be borne by the losing party or parties.    An administrative fee, in accordance with the fee schedule established by the JAC, shall be paid to the Plan by the affected employer(s) if the employer(s) is not affiliated with any of the organizations signatory to this Agreement.

*Sec. 12.    Any party to a dispute that has been arbitrated that believes the Arbitrator failed to address the established criteria of Article V, Section 8, may request the JAC to consider an appeal.    No appeal may be processed unless the Arbitrator's decision has been implemented.*

*Sec. 13.    A request to consider an appeal from a final decision of a Plan Arbitrator shall be filed with the Administrator, with copies to the other parties to the dispute, within five days of the date the Administrator transmitted the Arbitrator's decision. The request to consider an appeal shall include a copy of the Arbitrator's decision being appealed and a statement describing the basis of the claim that the Arbitrator failed to address the established criteria of Article V, Section 8.    The other parties to the dispute shall have three days to submit to the Administrator, with copies to the other parties, a response to the request for appeal.*

*Sec. 14.    Once the submissions of the parties are complete, the Administrator shall distribute copies of the appeal to the members of the JAC that are not parties to the dispute.    Within five days from receipt of the*

*submissions, each member of the JAC shall notify the Administrator whether the appeal should be heard. If a majority of the JAC does not wish to consider the appeal, the decision of the Arbitrator shall be final and binding. If a majority of the JAC members believes the appeal has merit, the Administrator shall arrange for a meeting of the JAC, which may be by telephone conference, to consider the appeal. The sole issue to be considered on appeal is whether the Arbitrator failed to address the established criteria of Article V, Section 8.*

*Sec. 15. If the JAC determines that the Arbitrator failed to address the established criteria of Article V, Section 8, it shall remand the case to the Administrator to process for a hearing before a new Plan Arbitrator.*

## ARTICLE VI

## CONTINUATION OF WORK

Sec. 1. During the existence of this Agreement, there shall be no strikes, work stoppages or picketing arising out of any jurisdictional dispute. Contractors and subcontractors shall make work assignments in accordance with the Obligations of the Employers as set forth in Article IX, and the Rules and Regulations of the Administrator. Members of organizations affiliated with the Department shall continue to work on the basis of their original assignment.

Sec. 2. Recognizing that it is in the best interests of the parties to this Agreement, the Department, on behalf of itself and the General Presidents of each of the affiliated National and International Unions, reaffirms its desire to eliminate work stoppages, slowdowns and other impediments to job progress and its intent to comply with the provisions of the Plan prohibiting jurisdictional strikes and agrees to enforce these provisions by direction and action of their respective National or International offices. In the event of a work stoppage, slowdown or other impediment to job progress, the employer may take the following course of action:

(a) The employer shall notify the Administrator or his designee of the alleged breach of this Article. Notice to the Administrator shall be by the most expeditious means available, with simultaneous notice by facsimile to the party alleged to be in violation and the involved National or International Union President(s). The International President(s) will immediately instruct, order and use the best efforts of his office to cause the local union or unions to cease any violation of this article. A National or International Union complying with this obligation shall not be liable for unauthorized acts of its local union.

(b) Upon receipt of said notice, the Administrator or his designee shall select an arbitrator from a panel of arbitrators chosen by the JAC.

(c) Upon his selection, the Arbitrator shall hold a hearing within 24 hours if it is contended that the violation still exists.

(d) The Arbitrator, with the assistance of the Administrator, shall notify the employer, the local union(s), and the appropriate National or International Union(s) and Employer Association(s) by facsimile of the place and time he has chosen for this hearing.  Said hearing shall be held in Washington, D.C. or, for a dispute arising in Canada, in Eastern, Central or Western Canada as determined by the Administrator, and shall be completed in one session.  A failure of any party or parties to attend said hearing shall not delay the hearing of evidence or issuance of a decision by the Arbitrator.

(e) The sole issue at the hearing shall be whether or not a violation of this Article has in fact occurred, and the Arbitrator shall have no authority to consider any matter in justification, explanation or mitigation of such violation or to award damages.  The Arbitrator's decision shall be issued in writing within 3 hours after the close of the hearing, and may be issued without an opinion.  If any party desires an opinion, one shall be issued within 15 days, but its issuance shall not delay compliance with, or enforcement of, the decision.  The Arbitrator may order cessation of the violation of this Article and other appropriate relief, and such decision shall be served on all parties by facsimile upon issuance.

(f)  The Arbitrator's decision may be enforced by the United States District Court for the District of Columbia or, for a dispute arising Canada, the appropriate Canadian court as determined by the Administrator, upon the filing of this agreement and all other relevant documents in the following manner: Any National or International Union, Employer or Employer Association whose affiliate was a party to the arbitration proceeding may notify the Administrator of the failure of any party to abide by the Arbitrator's decision.  A copy of the notice shall be sent simultaneously to all other parties to the arbitration proceeding and appropriate National or International Union(s), Employer(s) and Employer Association(s).  If the Administrator determines that the Arbitrator's decision is not being implemented, he shall proceed to obtain a temporary order enforcing the Arbitrator's decision.   Facsimile notice of the filling such enforcement shall be given to all directly affected parties.

(g) All parties signatory or stipulated to this agreement, consent to the jurisdiction of the United States District Court for the District of Columbia or, for a dispute arising in Canada, the appropriate Canadian court as determined by the Administrator, for the purposes of enforcement of an arbitration decision rendered under this Article.  In addition, in the proceedings to obtain a temporary order enforcing the arbitration decision, all parties to this agreement waive the right to a hearing and agree that such proceedings to enforce an arbitrator's decisions may be *ex parte*.  Such

agreement does not waive any party's right to participate in a hearing for final order of enforcement. The court's order(s) enforcing the Arbitrator's decision shall be served on all interested parties by hand, by facsimile, by delivery to their last known address or by registered mail.

(h) Any rights created by statute or law governing arbitration proceedings inconsistent with the above procedure or which interfere with compliance therewith are hereby waived by the parties to whom they accrue.

(i) Each party to the arbitration shall bear its own expense for the arbitration and agrees that the fees and expenses of the Arbitrator shall be borne by the losing party or parties. A party notifying the Administrator of the failure of another party to abide by an arbitrator's decision, shall be responsible for the ongoing attorneys' fees, court costs and expenses incurred by the Administrator in seeking to enforce the arbitrator's decision. The notifying party shall thereafter be reimbursed for any such attorneys' fees, court costs and expenses incurred by the Administrator by the party failing to abide by the Arbitrator's decision.

## ARTICLE VII

## ENFORCEMENT

Sec. 1.    When the JAC has determined that an Employer or National or International Union is in violation of this Agreement, such Employer or National or International Union shall be denied a representative on any committee established by this Agreement during the period of violation, provided, however, that in accordance with Article IV, Section 5, an Employer who is not stipulated to this Plan shall not be entitled to resolution by an arbitrator of any dispute in which he is involved or to invoke any sanctions against any National or International Union.

Sec. 2.    Any decision or interpretation rendered by an arbitrator shall be immediately accepted and complied with by all parties subject to this Agreement. If a party fails to accept and comply with a jurisdictional decision of an arbitrator or a ruling of the Administrator or the JAC, the Administrator may, with the approval of the JAC, proceed in the same manner as the enforcement of an arbitrator's decision set forth in Section 2 (f)-(i) of Article VI.

Sec. 3.    It shall be a violation of this Agreement for any Local, National or International Union, Employer or Employer Association signatory or stipulated to this Agreement, to enter into any agreement, resolution or stipulation that (a) attempts to establish any jurisdiction which deviates from the spirit and intent of the Agreement and Rules and Regulations of the Plan; or (b) permits jurisdictional disputes between affiliates of the Department to be resolved by a single craft labor-management

committee, provided the dispute involves stipulated contractors and can be processed under this Plan.

## ARTICLE VIII

## LOCAL BOARDS

Sec. 1.   In any community or locality where a plan for the settlement of jurisdictional disputes has been recognized by the Department, it shall be used in the first instance to bring about an agreement, settlement or decision.  However, any such local settlement, agreement or decision may be appealed by any of the involved parties in accordance with Section 2 and 3 of this Article.

Sec. 2.   The Administrator is empowered to refer to arbitration, in accordance with Article V, Sections 5-10, any appeal from a decision or ruling of a Local Board recognized under Section 1.   The authority of the Administrator to refer a case to arbitration shall be discretionary.  The Administrator is authorized, subject to the prior approval of the JAC, to prescribe rules as to the types of cases he will refer to arbitration.

Sec. 3.   The Administrator shall have the authority to establish such procedural regulations and administrative practices as may be required for the effective administration of this appeals procedure, subject to the prior approval of the JAC.

## ARTICLE IX

## OBLIGATIONS OF THE PARTIES

To the end that proper assignments of work are made by the Employer involved and that jurisdictional disputes between unions are settled under the terms of the Plan without interruptions of work, it is therefore agreed as follows:

Sec. 1.  Obligations of the Employer

(a) Each Employer or Employer Association stipulated to this Plan agrees that all cases, disputes or controversies involving jurisdictional disputes or assignments of work arising under this Agreement shall be resolved as provided herein, and shall comply with the decisions and rulings of the Administrator, the JAC, arbitrators or National Arbitration Panels established hereunder.  A jurisdictional dispute is defined as a dispute between unions over the assignment of work and in which the Employer has an interest.

(b) Each Employer agrees that he shall continue to make work assignments in accordance with Article V, Section 8 and the Rules and Regulations of the Administrator.

Continued misassignments by an Employer, as determined by the Administrator, shall be reported to the JAC which shall take such procedural or legal action against such Employer as it deems necessary and proper to effectuate the purposes of this Agreement.

(c) All participating Employer Associations shall inform their stipulated members, in writing, of their responsibility for the assignment of work in accordance with the Rules and Regulations of the Administrator.

(d) All participating Employer Associations shall encourage inclusion of work assignment training in all supervisory training programs.

(e) Each Employer who is bound by this Plan will use his best efforts to assure compliance with its terms by subcontractors engaged by the Employer on any construction job covered by the Plan.

Sec. 2.  Obligations of the Department and its Affiliated Unions

(a) The Department and each of its affiliated unions agree that all cases, disputes or controversies involving jurisdictional disputes and assignments of work arising under this Agreement shall be resolved as provided herein, and shall comply with the decisions and rulings of the Administrator, the JAC, arbitrators or National Arbitration Panels established hereunder.

(b) The Department and each of its affiliated National and International Unions agree that the establishment of picket lines and/or the stoppage of work by reason of an Employer's assignment of work are prohibited.  No Local Union of an affiliated National or International Union shall institute or post picket lines for jurisdictional purposes.

(c) In the event of a jurisdictional dispute, resulting in a work stoppage, strike, picket line or other interference of the work, a report of that fact shall be made by the Employer and/or the National or International Union immediately to the Administrator, to the Building and Construction Trades Department and to the appropriate Employer Association office for processing in accordance with Article VI of the Plan.

(d) In the event pickets are posted by any local trades council or any local of a National or International Union affiliated with the Department for jurisdictional purposes, the Department will immediately direct all National and International Unions to advise their affiliates to ignore such picketing and to continue to work.  If in contravention of this Plan a jurisdictional work stoppage should occur, it is the intent of this Article that the work shall continue with the crafts cooperating to the maximum extent possible to enable job continuity.

(e) The Administrator shall send a monthly report to each General President, the President of the Department and to the executive heads of the signatory Employer Associations setting forth all information on jurisdictional disputes for that month. The report should include the location and job where the dispute occurred, the parties involved, the subject of the dispute and shall indicate whether any stoppage occurred or picket lines were established.

## ARTICLE X

## NATIONAL ARBITRATION PANEL

Sec. 1.  National Arbitration Panels shall be established hereunder and shall be composed of three arbitrators, knowledgeable in the construction industry, appointed by the JAC.

Sec. 2.

(a) The JAC shall meet quarterly and among its other duties and responsibilities it shall, at each meeting, review the record of disputes filed with the Administrator and in particular shall review the record of decisions involving the same trades as submitted by the Administrator in accordance with Article IV, Section 6 hereof.

(b) A dispute will be declared repetitive by the JAC when in its judgment such dispute is disruptive to the industry or seriously jeopardizes the operational integrity of the Plan. All parties to the Plan may bring a dispute to the JAC for such determination. The JAC will develop such criteria and guidelines to determine what constitutes a repetitive dispute. The JAC will issue a written report to the party or parties who have requested a decision from the JAC involving the dispute referred for such consideration. The written report will be timely and reflect the circumstances and criteria used by the JAC to determine whether or not said dispute is in fact considered repetitive.

(c) In the event the JAC declares a dispute to be repetitive, the JAC shall refer the matter to the National and International Unions involved for a period of not more than 90 days during which time the Unions shall consult with the Employer Associations who represent Employers who have responsibility for that type of work. The Unions shall endeavor to reach a national agreement governing future jurisdiction. The Administrator shall assist the Unions and may appoint a mediator to facilitate settlement. If an agreement is reached, it shall be attested to by the Administrator and shall serve as a criterion for decisions in future disputes. Should the National and International Unions fail to reach an agreement within 90 days, the Administrator shall refer the dispute to a National Arbitration Panel.

Sec. 3.  In any case to go to a National Arbitration Panel, the Administrator shall notify all General Presidents of National and International Unions affiliated with the Department and the signatory Employer Associations stating the controversy to be considered.  Only directly affected parties as determined by the JAC shall be allowed to intervene.  Thirty days notice shall be given of the date set for the hearing.  Briefs shall be submitted and exchanged by all parties to the dispute at least ten days prior to the hearing date.

Sec. 4.  The National Arbitration Panel shall in every instance consider all pertinent evidence, including the criteria set forth in Article V, Section 8, and shall render a decision, if possible, within ten (10) days after the conclusion of the hearings. Copies of the National Arbitration Panel's decision shall be sent to all parties signatory to this Agreement.

Decisions of the National Arbitration Panel shall be immediately recognized under the provisions of the Constitution of the Department and Article IX of this Plan. Decisions of the National Arbitration Panel shall be immediately accepted and complied with by the disputing unions.

Sec. 5.  In the event any party to a dispute fails to present its case within the stated time, the National Arbitration Panel shall, nevertheless, proceed with the case and make its decision on the basis of the evidence presented.

ARTICLE XI

TECHNOLOGICAL CHANGES

Sec. 1.  The JAC shall establish a standing Technological Change Committee. The Committee shall concern itself with technological changes in the building and construction industry as they affect the jurisdiction of the various affiliated unions of the Building and Construction Trades Department.  The Committee shall consist of ten members from the Building and Construction Trades Department and ten members from the signatory Employer Associations, respectively.  The Committee shall select a chairman and a secretary.

Sec. 2.  The Committee is authorized to establish subcommittees provided that there is equal representation of labor and management on each subcommittee.  Each subcommittee shall elect a chairman and a secretary.

Sec. 3.  The Committee shall study existing methods of construction and procedures as they relate to technological changes in the industry and make recommendations to the JAC.  The Committee may refer particular items to the crafts concerned who may establish committees to determine craft jurisdiction and report their decisions to the Department and the signatory Employer Associations.

Sec. 4.  The Committee shall submit a report of its activities, including reports from any subcommittees, quarterly to the JAC.

## ARTICLE XII

### NATIONAL AGREEMENTS REGARDING JURISDICTION

Sec. 1.  When national agreements regarding jurisdiction between National or International Unions have been negotiated, immediate notice of such agreements shall be given to the appropriate management groups.  Prior consultation with such groups regarding the making of agreements between National or International Unions is desirable and should be carried on.

Sec. 2.  National agreements entered into and properly signed by disputing National or International Unions shall be filed with the Administrator and attested by the Administrator.  Such national agreements shall take effect prospectively and shall not apply to jobs in progress at the time of execution.  "Jobs in process" means any construction contract upon which the date for submission of bids or proposals has passed.

## ARTICLE XIII

### EFFECTIVE DATE, TERMINATION, CHANGE
### AND WITHDRAWAL

Sec. 1.  ***This Agreement shall take effect on January 1, 2003, and shall remain in force and effect until December 31, 2004.  If the parties do not agree to continue with the Plan as implemented on January 1, 2003, the provisions of the Plan in effect on December 31, 2002, will apply and shall continue in effect for each year thereafter unless terminated as provided for herein.***  Changes or amendments to this Agreement may be as provided for herein.

Sec. 2.  If either the Department or any signatory Employer Association desires to change or terminate this Agreement it shall notify the other party in writing at least ninety (90) days before the anniversary date of this agreement. When notice for change is given, the nature of the changes desired must be specified in the notice.  This Agreement shall be subject to change at any time by mutual consent of the parties hereto.

Any changes agreed upon shall be reduced to writing and signed by the parties hereto, the same as this Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed and effective as of the day and year above written.

## APPROVED CHANGES TO THE PLAN AND THE PROCEDURAL RULES

The parties to the Plan have agreed to continue the current version of the Plan with the following amendments to the Plan and the Procedural Rules. These changes became effective March 1, 2005. A new Green Book will be published with the amendments, along with agreed upon changes to the Decisions and Agreements of Record that appear in the back of the Green Book. You will be notified when the new version of the Green Book is available.

**1.** Prior to March 1, 2005, only employers and employer associations were permitted to file impediment to job progress claims. There have been cases where the employer files charges with the NLRB instead of coming to the Plan. Since the unions are unable to file impediment to job progress claims, the Plan is unable to process a complaint from the unions. To remedy this inequity, the parties have agreed to the following changes:

### Procedural Rules

Article III, Section 1 – When it is alleged, in a written notice, by a stipulated employer directly affected by the dispute, ~~or~~ the signatory Employer Association representing such employer, **or a National or International Union** that a work stoppage, slowdown, or other impediment to job progress is taking place, the Administrator shall proceed as set forth in Article VI of the Plan.

Article III, Section 2 - Notice to the Administrator shall include:

a. – ~~Union~~ **Party** engaged in strike, slowdown, or impediment to job progress [specify]

b. ~~Other u~~**U**nion or unions directly involved (in most cases, trade receiving original assignment)

Required Format for Notice

_____[Name of Union **or Employer**] is [state basis for claim of violation, *e.g.* strike] ~~in~~ **over a** jurisdictional dispute ~~with~~ **between** [Name of Union**s**] over ....

Article III, Section 3. b. – Filing an unfair labor practice charge with the National Labor Relations Board, or appropriate Canadian equivalent, as determined by the Administrator, or action in any court against a stipulated employer ~~by~~ **or** a National or International Union, or local affiliate thereof, where an issue is a case, dispute or controversy involving a jurisdictional dispute or assignment of work. Provided, that it shall not be considered an impediment to job progress if the responsible contractor is not stipulated to the Plan.

**Plan**

Article VI, Section 2, Last Sentence – In the event of a work stoppage, slowdown or other impediment to job progress, the employer **or National or International Union** may take the following course of action:

(a)    The employer **or National or International Union** shall notify the Administrator of the alleged breach of this Article.  Notice to the Administrator shall be by the most expeditious means available with simultaneous notice by facsimile to the party alleged to be in violation and the involved **employer and** National or International Union President(s).  **The employer will immediately use its best efforts to cease any violation of this article.**  The National or International President(s) will immediately instruct, order and use the best efforts of his office to cause the local union or unions to cease any violation of this article.  A National or International Union complying with this obligation shall not be liable for unauthorized acts of its local union.

**2.**    At pre-job meetings contractors sometimes make assignments to a generic job title rather than a particular union, *e.g.* cement mason.  On occasion this has caused confusion when the work starts and more than one union believes they were originally assigned the work because more than one union performs the type of work.  The parties to the Plan have modified the Plan language to call for assignments to be made to a particular union.

**Procedural Rules**

Article I, Section 1 – The contractor who has the responsibility for the performance and installation shall make a specific assignment of the work which is included in his contract **to a particular union(s)**.

**3.**    The parties to the Plan decided to include in the Procedural Rules the notice requirement for advising the other parties to a dispute of its intent to challenge a decision of record under Article V, Section 8(c).  This is not a change in the procedure, just a codification of the current procedure.

**Procedural Rules**

Article VI, New Section 2 and Renumber Existing Sections 2 and 3 – **If any party intends to rely on a Decision of Record to support its claim to the work, that fact must be disclosed to the Administrator and the other parties to the**

2

**dispute within two days of receipt of the notice of the dispute from the Administrator. The title of the Decision of Record and the page in the Green Book where the decision is located should be included in the notice. If any other party to the dispute intends to challenge the Decision of Record, pursuant to Article V, Section 8(c), notice of such challenge must be submitted by the day the list of arbitrators is due back in the Administrator's office.**

3

# STIPULATION

In signing this stipulation, the undersigned employer agrees to be bound by all the terms and provisions of the Agreement establishing procedures for the resolution of jurisdictional disputes in the construction industry known as the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry. In particular, the undersigned agrees to abide by those provisions of the Plan requiring compliance with the decisions and awards of the Administrator, arbitrators or National Arbitration Panels established under the Plan, and to fulfill the obligations of the Employer set forth in the Agreement.

This stipulation shall run for the term of the Agreement and shall continue in effect for each year thereafter unless specifically terminated effective upon the anniversary date of said Agreement, in accordance with the notice provisions contained in the Agreement. The effective date of this stipulation shall be

(Signed).....*[signature]*..................................................................

Company.........J.P. Phillips, Inc..............................................

Date...............7-10-06.......................................................

PLAINTIFF'S
EXHIBIT

B



*International Union of Bricklayers and Allied Craftworkers*

August 1, 2006

Mr. Richard M. Resnick, Administrator
Plan for the Settlement of Jurisdictional
  Disputes in the Construction Industry
900 Seventh Street, NW, Suite 1000
Washington, D. C. 20001

Dear Sir

In accordance with Article III of the Procedural Rules and Regulations of the Plan, this correspondence will serve to notify you of the following impediment to job progress.

a) Operative Plasterers & Cement Masons International Association (OPCMIA) Local 18 has threatened to halt and impede the work being performed by the responsible contractor, JP Phillips, Inc.

b) JP Phillips, Inc. has assigned the disputed work to Plasterers working under a BAC Collective Bargaining Agreement.

c) The work in dispute is plastering and restoration of plaster work.

d) Illinois State House, Springfield, Illinois.

e) <u>Responsible Contractor:</u>    JP Phillips, Inc.
                                     3220 Wolf Road
                                     Franklin Park, Illinois 60131
                                     (o) 847/288-0008
                                     (f) 847/288-0009

e) The responsible contractor has executed the agreed upon Plan stipulation form.

We request that you initiate procedures as provided by the Plan for immediate resolution.

Sincerely,

Timothy J. Driscol
BAC Director of Trade Jurisdiction

cc:   BAC President Flynn @ (202) 772-3853
      OPCMIA President Dougherty @ (301) 470-2502
      JP Phillips, Inc. @ (847) 288-0009
      Henry Kramer, BAC North Central Regional Director @ (630) 794-9146
      Steve Nelms, BAC District Council @ (630) 953-2106


PLAINTIFF'S
EXHIBIT
C



*International Union of Bricklayers*
*and Allied Craftworkers*

August 7, 2006

Mr. Richard M. Resnick, Administrator
Plan for the Settlement of Jurisdictional
 Disputes in the Construction Industry
900 Seventh Street, N. W., Suite 1000
Washington, D. C. 20001

        RE: IL 8/3/06

Dear Sir

Please be advised that representatives of the involved International Unions
have met in an effort to resolve the above-referenced matter. However, the
parties were unable to resolve this matter. Accordingly, we request that this
matter proceed to arbitration under the terms and provisions of the Plan for the
Settlement of Jurisdictional  Disputes in the Construction Industry.

Sincerely,

Tim Driscoll
Director of Trade Jurisdiction

cc:  BAC President Flynn @ (202) 772-3853
     OPCMIA President Dougherty @ (301) 470-2502
     JP Phillips @ (847) 288-0009

PLAINTIFF'S
EXHIBIT
D

# PLAN FOR THE SETTLEMENT OF JURISDICTIONAL DISPUTES IN THE CONSTRUCTION INDUSTRY

In the Matter of Arbitration Between:

J.P. Phillips, Inc. (Phillips)
The Responsible Employer

And

The International Union of Bricklayers & Allied Craftworkers (BAC)

And

The Operative Plasterers and Cement Masons International Association (OPCMIA)

Plan File: IL 8/3/06 and IL 8/18/06

Before

Arbitrator John J. McMahon

Hearing: August 22, 2006

Regarding: Illinois State House, Springfield, Illinois

Appearances:  Tim Driscoll, BAC
Michael Gannon, OPCMIA
Michael Pilolla, J.P. Phillips, Inc.

## Introduction

I have before me two cases for determination. Case IL 8/3/06 is a jurisdictional dispute over plastering and restoration of plastering work being performed at the Illinois State House in Springfield, Illinois. There are two separate projects involved in the case, both being performed by Phillips but under subcontracts from different contractors. Case IL 8/18/06 involves a claim of an impediment to job progress by a Local Union of the OPCMIA. I was originally assigned to hear a third case, WI 7/11/06, involving the same parties, but that case was withdrawn prior to the hearing. I find that all parties are stipulated to the Plan. I will deal with the impediment to job progress case first.

PLAINTIFF'S
EXHIBIT

E

Case IL 8/18/06

In this case, Phillips and the BAC claim that the OPCMIA and its Local 18 have violated the impediment to job progress provisions of the Plan by processing a jurisdictional dispute outside the Plan's approved procedures and then threatening to file suit to enforce the decision issued by the arbitrator in that other procedure. Article III, Section 3 of the Procedural Rules of the Plan defines an impediment to job progress to include "Filing a grievance under a collective bargaining agreement, or under a local plan for the settlement of jurisdictional disputes not recognized by the [Building and Construction Trades] Department" and filing a court action involving a jurisdictional dispute or assignment of work.

The procedure for resolving jurisdictional disputes in the project labor agreement that led to the issuance of the decision by Arbitrator Glenn A. Zipp was not a procedure approved by the Building and Construction Trades Department. I find that the processing of the jurisdictional dispute under that procedure constituted an impediment to job progress within the meaning of Article III, Section 3. Similarly, any threat to enforce or attempt to enforce Arbitrator Zipp's decision also constitutes an impediment to job progress.

Decision

The OPCMIA and its Local Union are hereby ordered not to threaten to file, file or pursue any other action in an attempt to enforce Arbitrator Zipp's August 8, 2006, bench decision and August 10, 2006, written decision, or engage others to do so in their behalf.

Case IL 8/3/06

As noted above, there are really two separate jobs involved in this case. I have determined that the work performed by Phillips under a subcontract with EverGreene Painting Studios, Inc. has been completed. The policy of the Plan is not to issue a decision when the work is complete. I will not issue any decision on the work being performed under the EverGreene subcontract.

The second job is being performed by Phillips under a subcontract from Core Construction. As a Plan Arbitrator, I must follow the order of criteria of Article V, Section 8 of the Plan in arriving at a decision.

The first consideration is whether there are any agreements between the National or International Unions governing the dispute. I have determined that there are no agreements between the BAC and OPCMIA governing this dispute. The OPCMIA claimed that the project labor agreement was an agreement within the meaning of Article V, Section 8(a). The project labor agreement was not signed by the International Unions, and cannot be considered an agreement.

2

The next factor to consider is whether there is a previous decision of record governing the case. The BAC relies on a Decision of Record issued by a National Arbitration Panel on February 11, 2004, and amended by the National Arbitration Panel on March 11, 2004. This decision states unequivocally "Henceforth, all jurisdictional disputes between BAC and OPCMIA that are brought before the Plan shall be resolved in favor of the work assignment of the involved Employer." I find that this decision of record governs this case within the meaning of Article V, Section 8(b). Phillips assigned the work to the BAC. The decision of record requires that the contractor's assignment be sustained.

The OPCMIA does not dispute that the decision of record governs this case. The OPCMIA relies on Article V, Section 8(c) which allows the Plan Arbitrator to rely on prevailing practice if it is demonstrated that the recognized and established prevailing practice in the locality of the work has been contrary to the applicable decision of record. The BAC, relying on an August 12, 2004, decision of Plan Arbitrator Tony A. Kelly in Case PA 7/29/04, argues that the decision of record governing this dispute was intended to block reliance on Section 8(c).

I served on the National Arbitration Panel that rendered the decision of record. I concur with Arbitrator Kelly's interpretation that the intent of the National Arbitration Panel when it issued the decision of record was that because both unions performed plastering work and the repetitive disputes were disrupting the industry, henceforth the contractor's assignment would resolve the jurisdictional dispute "irrespective of any claims by either party to prevailing practice as set forth under c) of Article V, Section 8 of the Plan." For this reason I do not need to make a determination on prevailing practice under 8(c). I need not address any of the other lower criteria now that I have found the dispute governed by the decision of record.

Decision

Therefore, it is my decision that the decision of record dated February 11, 2004, and amended on March 11, 2004, governs this dispute. The work shall continue as assigned by Phillips to plasterers represented by the BAC.

This decision shall only apply to the job in dispute.

John J. McMahon
Arbitrator
August 24, 2006

3

**J.P. Phillips, Inc.**
**3220 Wolf Rd~Franklin Park, IL  60131**
**Phone (847)288-0008-Fax (847)288-0009**
**LATHING & PLASTERING**

August 18, 2006

Mr. Richard M. Resnick, Administrator
Plan for the Settlement of Jurisdictional
  Disputes in the Construction Industry
900 Seventh Street, N. W., Suite 1000
Washington, D. C. 20001

     RE:  IL 8/1/06

Dear Sir:

Please be advised that the OPCMIA continues actions in violation of their
obligations under Article III of the Procedural Rules and Regulations of the Plan
for Settlement of Jurisdictional Disputes in the Construction Industry in the
above-referenced matter.  Specifically, the OPCMIA is threatening legal action
against a stipulated employer where an issue is a dispute involving an
assignment of work. (see attached)

Accordingly, we request that you initiate procedures under the Plan for
immediate resolution.

Sincerely,

Mike Pilolla

cc:  BAC President Flynn @ (202) 772-3853
     OPCMIA President Dougherty @ (301) 470-2502

PLAINTIFF'S
EXHIBIT
F

# PLAN FOR SETTLEMENT OF JURISDICTIONAL DISPUTES
# IN THE CONSTRUCTION INDUSTRY

**900 7th Street, N.W., Suite 1000, Washington, D.C. 20001**
**(202) 785-9300**
**Fax (202) 775-1950**

September 20, 2006

## VIA FACSIMILE

John J. Dougherty, General President
Operative Plasterers' and Cement Masons'
   International Association of the United States
   and Canada
14405 Laurel Place, Suite 300
Laurel, Maryland 20707

RE:   IL 8/3/06

Dear President Dougherty:

     In accordance with Article V, Section 14, of the Plan, your request to consider an appeal of the arbitrator's decision in the above-referenced case was submitted to the Joint Administrative Committee, along with the IUBAC's and the contractor's response. I am writing to inform you that a majority of the members of the Joint Administrative Committee voted not to consider the appeal. As a result, the decision of the arbitrator is final and binding.

Sincerely,

Richard M. Resnick
Administrator and Counsel to the Plan

cc:   John J. Flynn, IUBAC
      Michael Pilollo, J.P. Phillips, Inc.





PLAINTIFF'S
EXHIBIT
G

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Plan for the Settlement of Jurisdictional Disputes in the Construction Industry, by and through Administrator Richard M. Resnick | Operative Plasters & Cement Masons International Association of the United States and Canada |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____11001_____ (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____8888_____ (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) TERRY R. YELLIG (D.C. Bar ID No. 946095) MARTIN J. CRANE (D.C. Bar ID No. 436424) SHERMAN, DUNN, COHEN, LEIFER & YELLIG, P.C. 900 Seventh St., N.W. Suite 1000 Washington, D.C. 20001 (202) 785-9300 | ATTORNEYS (IF KNOWN) Brian A. Powers, Esq. O'Donoghue & O'Donoghue, LLP 4748 Wisconsin Avenue, N.W. Washington, D.C. 20016 (202) 362-0041 |

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ⦿ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ⦿ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ⦿ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ○ A. Antitrust | ○ B. Personal Injury/ Malpractice | ○ C. Administrative Agency Review | ○ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane ☐ 315 Airplane Product Liability ☐ 320 Assault, Libel & Slander ☐ 330 Federal Employers Liability ☐ 340 Marine ☐ 345 Marine Product Liability ☐ 350 Motor Vehicle ☐ 355 Motor Vehicle Product Liability ☐ 360 Other Personal Injury ☐ 362 Medical Malpractice ☐ 365 Product Liability ☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act **Social Security:** ☐ 861 HIA ((1395ff) ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g) ☐ 864 SSID Title XVI ☐ 865 RSI (405(g) **Other Statutes** ☐ 891 Agricultural Acts ☐ 892 Economic Stabilization Act ☐ 893 Environmental Matters ☐ 894 Energy Allocation Act ☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment. *(If Antitrust, then A governs)* |

| ○ E. General Civil (Other) | OR | ○ F. Pro Se General Civil | |
|---|---|---|---|
| **Real Property** ☐ 210 Land Condemnation ☐ 220 Foreclosure ☐ 230 Rent, Lease & Ejectment ☐ 240 Torts to Land ☐ 245 Tort Product Liability ☐ 290 All Other Real Property **Personal Property** ☐ 370 Other Fraud ☐ 371 Truth in Lending ☐ 380 Other Personal Property Damage ☐ 385 Property Damage Product Liability | **Bankruptcy** ☐ 422 Appeal 28 USC 158 ☐ 423 Withdrawal 28 USC 157 **Prisoner Petitions** ☐ 535 Death Penalty ☐ 540 Mandamus & Other ☐ 550 Civil Rights ☐ 555 Prison Condition **Property Rights** ☐ 820 Copyrights ☐ 830 Patent ☐ 840 Trademark **Federal Tax Suits** ☐ 870 Taxes (US plaintiff or defendant ☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty** ☐ 610 Agriculture ☐ 620 Other Food &Drug ☐ 625 Drug Related Seizure of Property 21 USC 881 ☐ 630 Liquor Laws ☐ 640 RR & Truck ☐ 650 Airline Regs ☐ 660 Occupational Safety/Health ☐ 690 Other **Other Statutes** ☐ 400 State Reapportionment ☐ 430 Banks & Banking ☐ 450 Commerce/ICC Rates/etc. ☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations ☐ 480 Consumer Credit ☐ 490 Cable/Satellite TV ☐ 810 Selective Service ☐ 850 Securities/Commodities/ Exchange ☐ 875 Customer Challenge 12 USC 3410 ☐ 900 Appeal of fee determination under equal access to Justice ☐ 950 Constitutionality of State Statutes ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| | | | |
|---|---|---|---|
| **○ G. Habeas Corpus/ 2255**<br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | **○ H. Employment Discrimination**<br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br>*(If pro se, select this deck)* | **○ I. FOIA/PRIVACY ACT**<br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br>*(If pro se, select this deck)* | **○ J. Student Loan**<br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

**○ K. Labor/ERISA (non-employment)**
- ☐ 710 Fair Labor Standards Act
- ☒ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Labor Railway Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**○ L. Other Civil Rights (non-employment)**
- ☐ 441 Voting (if not Voting Rights Act)
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights
- ☐ 445 American w/Disabilities-Employment
- ☐ 446 Americans w/Disabilities-Other

**○ M. Contract**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholder's Suits
- ☐ 190 Other Contracts
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**○ N. Three-Judge Court**
- ☐ 441 Civil Rights-Voting (if Voting Rights Act)

**V. ORIGIN**
- ⊙ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
This is an action to confirm two (2) arbitration awards.

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____ Check YES only if demanded in complaint   JURY DEMAND: YES ☐ NO ☒

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

DATE January 19, 2007   SIGNATURE OF ATTORNEY OF RECORD _[signature]_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.